UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO B BROWN,<br><br>   Plaintiff,<br><br>  v.<br><br>AUTO WAREHOUSING CO.,<br><br>   Defendant. | Case No. 24-cv-07300-RFL<br><br>**ORDER DENYING MOTION TO REMAND AND MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 21, 24 |

  Plaintiff Mario Brown brought a class action suit in California state court against his employer, Defendant Auto Warehousing Co., and 100 Doe Defendants. Brown's complaint alleged five causes of action comprising violations of the California Labor Code for (1) failure to pay minimum wage for all hours of work, (2) failure to authorize or permit meal periods, (3) failure to indemnify employees for employment-related losses and expenditures, (4) failure to provide complete and accurate wage statements, and (5) unfair business practices in violation of the Business and Professions Code. (Dkt. No. 1-2 ("Complaint").) Auto Warehousing removed the case to federal court, asserting that removal was proper based on either (a) federal question jurisdiction under the Labor Management Relations Act ("LMRA") or (b) diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"). (Dkt. No. 1.) Auto Warehousing now moves to dismiss Brown's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and requests that the Court take judicial notice of two collective bargaining agreements ("CBAs") that governed the terms of Brown's employment (Dkt. Nos. 21; 21-2); Brown moves to remand

1

the case to state court (Dkt. No. 24). For the reasons that follow, Auto Warehousing's request for judicial notice is **GRANTED**, and Auto Warehousing's motion to dismiss and Brown's motion to remand are both **DENIED**. This order assumes the parties' familiarity with the underlying facts, the applicable legal standards, and both sides' arguments.

*Motion to Remand.* Brown's motion to remand is denied because federal court jurisdiction is proper under CAFA. Brown argues that Auto Warehousing failed to establish CAFA's $5,000,000 amount-in-controversy requirement because its amount-in-controversy calculations "rely on sweeping, evidence-free assumptions, principally 100% violation rates and maximum penalties." (Dkt. No. 24-1 at 5.)[1] Because Brown's argument is that the assumptions on which Auto Warehousing's numbers "are based are not supported by evidence," Brown's attack is factual, and Auto Warehousing must establish by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. *Anderson v. Starbucks Corp.*, 556 F. Supp. 3d 1132, 1136 (N.D. Cal. 2020) (quoting *Harris v. KM Indus., Inc.*, 980 F.3d 694, 700 (9th Cir. 2020)).

Auto Warehousing has met this burden. After a review of its records, Auto Warehousing found that it employed an average of 160 non-exempt employees per year during the relevant four-year time period. (Dkt. No. 1 at ¶ 58.) Auto Warehousing's calculations used real wage rates, specifically, state minimum wage averages and Brown's personal hourly rate of $17.73, which Auto Warehousing obtained from a declaration from its Director of Human Resources, Jacqueline Wihbey. (*Id*. at ¶¶ 59–62; *see also* Dkt. No. 1-3 at 3.) While Brown characterized Auto Warehousing's calculations as assuming "maximal class wide noncompliance" (Dkt. No. 24-1 at 5), Auto Warehousing's assumptions were reasonable in light of the allegations in Brown's complaint. Brown's minimum wage and meal period claims arose from his allegations that Auto Warehousing had a policy of rounding down the putative class's "total daily hours at the time of their clock-ins and clock-outs, including clock-ins and clock-outs for meal breaks, to

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

the nearest quarter of an hour." (Complaint at ¶ 36(a); *see also id*. at ¶ 43(a).) Rather than alleging simply that Auto Warehousing from time-to-time rounds down its employees' total daily hours, Brown alleges that Auto Warehousing has an ongoing policy of doing so. *Cf. Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015). It was therefore reasonable for Auto Warehousing to treat each meal break as having been too short and each day as having been one hour short based on the four clock-ins and clock-outs. For this same reason, Auto Warehousing also reasonably assumed that for Brown's wage statement claim, each employee would be entitled to the statutory limit of $4,000 in penalties. Finally, Auto Warehousing's arithmetic, which incorporated the previously described numbers, revealed that the total estimated amount in controversy is "well in excess" of $5,000,000, even without including damages for Brown's unfair business practices claim, "all [other] applicable penalties," and liquidated damages. (Dkt. No. 1 at 72.) Combined, this is sufficient to establish the amount in controversy by a preponderance of the evidence. Brown's motion to remand is denied.

    ***Attorneys' Fees and Costs.*** Accordingly, the Court declines to award attorneys' fees and costs to Brown for litigating the motion because removal was proper under CAFA.

    ***Request for Judicial Notice and Motion to Dismiss.*** The Court grants Auto Warehousing's request for judicial notice of the 2018 and 2021 CBAs that governed Brown and the putative class's employment. (*See* Dkt. No. 21-2.) Auto Warehousing "does not rely on judicial notice to establish facts outside the CBA, in which case [Brown] may reasonably dispute whether the CBA actually establishes them," but instead "seeks to show only that the CBA says what it says for the purpose of determining preemption." *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1143–44 (N.D. Cal. 2019) (cleaned up). The CBAs are thus properly considered in evaluating Auto Warehousing's motion to dismiss and its arguments.

    Auto Warehousing's motion to dismiss is denied. None of Brown's claims are preempted under Section 301. A claim is preempted under Section 301 if (1) it arises solely from a "right or duty of the CBA" or (2) it nonetheless requires interpretation of a CBA. *Alaska Airlines Inc. v.*

*Schurke*, 898 F.3d 904, 920–21 (9th Cir. 2018) (citation omitted).  None of Brown's claims fulfill these requirements.

Brown's minimum wage claim neither arises from a CBA right nor requires interpreting a CBA.  Brown's claim is not an overtime claim (nor is it intertwined with one), as his claim is that he was not paid at all for some periods when his daily hours were rounded down. (Complaint at ¶ 37.)  And even if the Court were to construe Brown's claim as containing an overtime component, the overtime exemption in Labor Code Section 514 does not apply. Section 514 requires that the applicable CBA provide a regular hourly rate of pay "not less than 30 percent more than the state minimum wage" for all employees covered by the CBA. However, instead of arguing that the CBAs' hourly rates of pay are more than 30 percent *above* the state minimum wage, Auto Warehousing argues that the CBAs' hourly rates of pay "are more than *30 percent of the applicable California minimum wage rates*." (Dkt. No. 21-1 at 11–12 (emphasis added); *see also* Dkt. No. 21-2 at 17 (reflecting 2020 CBA hourly wage rate for "Yard/Shuttle" classification of $16.50, 27% above the 2020 California minimum hourly wage of $13.00).)  Accordingly, the minimum wage claim does not arise solely from a CBA right, even if the claim did contain an overtime component.  *See Alaska Airlines Inc*, 898 F.3d at 921. (*See also* Dkt. No. 21-1 at 11–12.)

Brown's minimum wage claim also does not substantially depend on the analysis of a CBA.  Rather than complaining about the *rate* at which he was compensated, Brown is alleging that he and other members of the putative class did not receive *any payment* for certain hours due to Auto Warehousing's policy of rounding down.  All that needs to be decided is whether Auto Warehousing paid its employees "minimum wages for all hours they worked, an inquiry that does not implicate any CBA provisions." *Jimenez v. Young's Mkt. Co., LLC*, No. 21-CV-02410-EMC, 2021 WL 5999082, at *8 (N.D. Cal. Dec. 20, 2021) (citation omitted).  Because Brown's unpaid wages claim does not arise from a CBA right or depend on the interpretation of a CBA, Section 301 does not preempt the claim.

Auto Warehousing does not contend that Brown's meal break claim arises from a CBA right, but argues only that this claim substantially depends on the analysis of a CBA. Auto Warehousing points to (1) a CBA provision stating that employees are entitled to "a half (1/2) hour unpaid lunch," the start time of which "may vary based on production needs, staying within state and federal law regarding breaks" (Dkt. No. 21-1 at 13), and (2) Labor Code Section 512's requirement of a thirty-minute meal period. (*Id.* at 14.) However, Brown's meal period claim, which arises from allegations that he did not receive meal periods for each five-hour period he had worked due to Auto Warehousing rounding down his daily hours, does not turn on the interpretation of the CBAs or Auto Warehousing's practices for handling "missed lunch periods." (*Id.* at 13–14.) Even if the CBAs afford Auto Warehousing some flexibility regarding the start time of its employees' lunch breaks, the CBAs do not otherwise affect Brown's right to a thirty-minute meal period for every five-hour period worked. Thus, Brown's right to a meal period is not substantially dependent on analysis of a CBA, and his meal period claim is not preempted by Section 301. *Johnson v. S.F. Health Care & Rehab Inc.*, No. 22-CV-01982-JSC, 2022 WL 2789809, at *7 (N.D. Cal. July 15, 2022) (provision permitting interruption of meal periods "in case of emergency" need not be interpreted when deciding meal period claim).

Auto Warehousing does not contend that Brown's indemnification claim arises from a CBA right, but argues only that this claim substantially depends on the analysis of a CBA. The indemnification claim arises from Brown's allegations that Auto Warehousing required Brown and the putative class "to use or purchase their own tools" without reimbursing them. (Complaint at ¶ 50(a).) Labor Code Section 2802 provides that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802(a). This protection is "non-waivable," therefore, "it is not clear why the Court would need to reference the CBA at all, let alone interpret it, to resolve [Brown's] claim for failure to reimburse expenses . . . , which does not invoke his rights under the CBA." *Carrillo v. Monterey Mech. Co.*, No. 24-CV-09202-LJC, 2025 WL 2615064, at *15 (N.D. Cal. Sept. 10, 2025) (citation omitted). To be sure, the

CBAs include provisions stating that "[t]he Employer will furnish tools and equipment for use by employees in accordance with work performed under this contract," and that "[t]he Company will replace any defective or broken tools during normal job usage." (Dkt. No. 21-2 at 14, 39.) But "the fact that a CBA 'may provide a remedy for conduct that coincidentally violates state-law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract.'" *Carrillo*, 2025 WL 2615064, at \*15 (quoting *Wilson-Davis v. SSP Am., Inc.*, 434 F. Supp. 3d 806, 816 (C.D. Cal. 2020)). Brown's claim that he and members of the putative class were not reimbursed for certain tools they had to purchase for work does not require interpreting CBA provisions relating to Auto Warehousing's obligations to provide tools and occasionally replace them. Because Brown's indemnification claim does not substantially depend on the interpretation of a CBA, it is not preempted by Section 301.

Auto Warehousing argues only that the wage statement and unfair business practices claims are "derivative claims" preempted under Section 301 because their underlying claims are preempted. (Dkt. No. 21-1 at 15–16.) With Brown's unpaid wages, meal period, and indemnification claims not preempted by Section 301, his wage statement and unfair business practices claims are similarly not preempted.

Because none of Brown's claims are preempted by the LMRA, Brown was not required to exhaust the CBAs' grievance procedures as required by the LMRA. *Sidhu v. Flecto Co.*, 279 F.3d 896, 898 (9th Cir. 2002) ("Before bringing suit, however, an employee must first exhaust the grievance procedures established by the CBA."). (*See* Dkt. No. 21-1 at 16.) The LMRA thus does not provide a basis on which to dismiss Brown's claims.

Moreover, Brown's claims are not subject to the CBAs' grievance and arbitration procedures. Statutory claims such as Brown's "may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991). Under the terms of the CBA, the CBA's grievance and arbitration procedures apply to "[a]ll disputes growing out of the interpretation or application of the Agreement or practices there under, or matters concerning discharge, discipline, rejection of seniority." (Dkt. No. 21-2

6

at 23, 49.)  Furthermore, Section 13.6 of the CBAs state that "[t]he power and authority of the arbitrator shall be strictly limited to determining the meaning and interpretation of the express terms of the Agreement and issuing an award in accordance with the Agreement."  (*Id*. at 24, 50.)  However, in support of its argument that Brown's claims are subject to the CBAs' grievance and arbitration procedures, Auto Warehousing merely repeats its assertions that Brown's claims "are disputes arising out of the terms of the CBAs" or are "derivative" of such claims.  (Dkt. No. 21-1 at 19.)  But as described above, Brown's claims arise from rights under state law, not from CBA rights, and do not otherwise involve disputes surrounding the interpretation or application of the CBAs.  The CBAs' grievance and arbitration provisions therefore do not apply to, and do not require dismissing, Brown's claims.

*Conclusion.*  For the foregoing reasons, Brown's motion to remand is **DENIED**, Auto Warehousing's request for judicial notice is **GRANTED**, and Auto Warehousing's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

Dated: November 6, 2025

RITA F. LIN
United States District Judge